IN THE UNITED STATES DIDTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN A. ORTLAND                                      PLAINTIFF

VERSUS

HARRISON COUNTY. MISSISSIPPI
HARRISON COUNTY SHERIFF'S DEPARTMENT
GEORGE PAYNE, Individually, and in his official
capacity as Harrison County Sheriff, RICK GASTON,
individually and in his official capacity. DIANNE GASTON-RILEY, in her
official capacity with the HARRISON COUNTY SHERIFF'S DEPARTMENT, and
individually,HARRISON COUNTY BOARD OF SUPERVISORS, AMERICAN
CORRECTIONAL ASSOCIATION, HEALTH ASSURANCE, LLC, AND
UNKNOWN DEFENDANTS 1-10                              DEFENDANTS



**COMPLAINT**

This is an action to recover damages from the defendants for violations of his civil rights
Under the UNITED STATES CONSTITUTION, and all AMENDMENTS to same.

**PARTIES**

1.

Plaintiff, at the time of said violations of his civil rights was a resident of
Gulfport, MS, residing at the now defunct "Tropical Mobile Home Park" on Pass
Rd., adjacent to the Village Square Shopping Center.

2

Defendant HARRISON COUNTY, MS, is a political subdivision of the State
of Mississippi.

3

Defendant HARRISON COUNTY SHERIFF'S DEPARTMENT, is a law
enforcement agency and political subdivision or entity organized to provide
security and safety to the citizens of Harrison County. MS

4

Defendant, GEORGE PAYNE, was at the time of said violations, the elected and
acting Sheriff of Harrison County, MS

5

Defendant, RICK GASTON,  was at the time emplyed in a supervisory capacity
with the Harrison County Sheriff's Department.

6

Defendant, DIANNE GASTON-RILEY, at all times material hereto, was
employed by the Harrison County Sheriff's Department as the Director of
Corrections.

7.

Harrison County Board of Supervisor was at the time the duly elected and
representative governing body

8

American Correctional Assurance, was at the time a national accreditation agency
of correction agencies or department.

9.

Health Assurance LLC, was at the time the health care provider for the Sheriff's
Detention facility.

10.

Unidentified Defendant  1, is a very large male, with dominant hand believed to
be right

11.

Unindentified Defendant 2, is significantly shorter man, in comparison with
Defendant 1

12

Unidentified Defendants 3-10 are persons or entities whose identifying
information and / or conduct are not specifically known to Plaintiff at this time.
Once determined, Plaintiff intends to specifically name them.

## JURISDICTION

13

This Court has civil rights subject matter jurisdiction under 28 U.S.C. and federal subject matter jurisdiction under 28 U.S.C. section 1331 and section 1983. Plaintiff, for specic and credible reasons did not timely pursue potential state law claims within the statutory loimitations of the Mississippi Tort Claim Act. Thus there are no state calaims over which this court will be required to exercise supplemental jurisdiction.

## VENUE

14

Venue is proper in this jurisdiction and district pursuant to 28 U.S.C. section 1391 Because a substantial part of the real and immediate harm sustained by Plaintiff occurred in the judicial district and division.

## FACTS AND ALLEGATIONS

15

Early A.M. Wednesday Sept 8, 2004, I was put under arrest, in my residence in the Tropical Mobile Home Park. Vipolation alleged are 1 ) impeding an officer in his duty, and Disturbing the Peace.

A brief description is as follows. Also a true and correct copy of a document entitled "STATEMENT OF FACTS" is attached as Exhibit 1. A copy of said document was delivered to the local office of the FBI.

I was falsely accused by a man who I had let stay with me, he was homeless in Mississsippi, and a veteran trying to enter The Bilox VA Drug Rehab Facility. I was trrasported to the Harrison County Sheriff's Dept. Detention Facaility.

Knowing I had no outside contacts and not a sufficient bank account and no employer to use as a reference, I stated to sheriff personnel that I did not intend to "bond out" and that in due course "I wished to be taken before a magistrate. I was placed in a changing room. The room was illuminated only by light entering ftrom a "pass through' opening.

Shortly thereafter two figures entered. The much larger of the two commenced to wrap a cloth appearoing material around his fist and started to beat and actually torture me. I was smashed against a wall, sustaining a painful bump on the back of my head and knockeda to the floor numerous times. I don't believe that I ever said anything. Theor intent was clear, and I woul not give them any excuse or pretext for

anger.  I was ordered to get up from the flor numerous times.  If I didn't rise quickly enough, various methods were utilized to bring me to my feet., to wit :  the beater would grab my hair and pull me to my feet, the most painful method and one still causing me lasting injury ( three years later now ) was to grab my right hand and bend the fingers back as far aqs possible, without snapping the bones, eliciting a blood curdling scream of agnony.  I do remember asking myselfonce, after being "beaten to the floor", why am I trying to get up again, just to be knocked back down, while I was puashing my shoulder up the  wall for leverage. To accomplish it.

## **PRAYER FOR RELIEF**

Plaitiff demands a trial by jury in this cause, and relief that the court may determine.

John A. Ortland
9-10-2007
JOHN A. ORTLAND

(90) 228-832-2332

MAJOR Wm TAYLOR, U.S. ARMY
RETIRED
10325  34 AVE
GULFPORT. MS  39503

**Statement of Facts**                                                                 Pg. 1

   Early A.M., Wednesday, Sept. 8, 2004, I was put under arrest, in my residence in the Tropical Mobile Home Park ( TMHB ), under the facts to follow.  Violations alleged are: 1) Impeding an officer in his duty, and  2 ) Disturbing the peace .

   My contact with the officer arose from the following circumstance.  As I was sitting in my reading chair, I had seen him talking to a disturbed man in the commercial parking lot next to TMHB. The man had just voluntarily moved his myriad luggage and self from my residence. He had no home in Mississippi and had been staying in my trailer while awaiting a vacancy in the drug rehab program at Biloxi V.A. In my place he would continually nod off to sleep with a lit cigarette.  He had done this earlier that night while talking to me across from my chair. Being worried again about a fire, I told him that he could stay one more night, and then we would have to talk. He immediately went into some sort of rage and started to pack his luggage to leave without saying anything.  Days earlier he related to me that he carried drugs and showed me a long orange plastic tube that he would affix to his thigh with  a long piece of rawhide.  He indicated that he received Methadone and Xanax,120 and 140 counts from a continual supply mailed to his father residence in Louisiana.

   The officer left the conversation he was having with this guy, Paul Bechtold III, and stepped through the commercial divider, walking toward my residence. As he approached my stairs I arose and slid my glass door open.  He wanted to talk to me, and I invited him inside.  He said that that guy standing in the Village Square Parking lot said that I had punched him in the face.  I responded that the man was lying or straight out lying.  He asked me for my name and social security number, which I immediately gave him and repeated same.  Then he asked  "What company are you with?"  I was not only shocked that this ungrateful Paul had made this false accusation, but was doubly shocked and confused to be asked the latter.  I had just recently retired on social security upon being stuck in Mississippi and wondered what the relevance was of such a question.  A top line local firm, and you'll be treated with respect ?  Should I give him the name of my own company in California, which I never formally closed down ?

   Thus I told him that I had never heard of such a question asked for in an identification and that I had a law background / decree and was it mandatory in Mississippi to give a company name.He answered in the affirmative.  He certainly showed that he was not happy to be questioned.  He very quickly traced me by name and SSN, and declared "Oh your just a drunk, turn around " He said that I was under arrest and handcuffed me. He led me out and to his squad car, which was parked next to the pile of Paul's luggage in the adjoining mall parking lot.

   In the squad car he told me that he didn't like people who lived in trailer parks! At that point I believed I started to get concerned.  I requested that he secure my home. He went back to my place but never did so. Much later, when I got back, I found that Paul had reentered my home and robbed and destroyed property. Evidence of his reentry consisted of ticket stubs to the New Orleans Saints game which he had  attended the prior Friday. The expectation was his return the same night, not four nights later. Along with the stubs were other detritus he left on the pet traveler I used as a table in front of my chair. Said items were not there when I was unceremoniously removed from my house..

   Expecting his return as stated, I had told him when he left for the game, that if I wasn't home when

*Exhibit #1 of 4*

he got back, he was instructed to find me in a designated numbered trailer. After those several days of no-show, he just got back and broke into my home. He repeated the unlawful entrance, after I left in the custody of the officer

It became apparent that to the officer I was "a person of no merit", and that he thought that he could get away with anything. Obviously a person in my situation would not be happy. Sitting on a bench at the police station, I went silent when asked where I was born. If he could instantly find my D.U.I.'s violations in the 1990's, I felt that he could just as easily locate my birth place. So I silently sulked for awhile, then answered. I never once wised off or became insulting or combative.

Later I was transferred to the Harrison County Sheriff Dept. Knowing I had no outside contacts and not a sufficient bank account and no employer to use as a reference, I stated to sheriff personnel that I did not plan to "bond out" and that in due course "I wished to be taken before a magistrate". I was placed in a changing room. The room was illuminated only by light dimly entering from a "pass through" opening.

Shortly thereafter two figures entered. The much larger of the two commenced to wrap a cloth appearing material around his fist and started to beat on and actually torture me. I was smashed against a wall, sustaining a painful bump in the back of my head, and knocked to the floor numerous times. I don't believe that I ever said anything. Their intent was clear, and I would not give them any excuse or pretext for anger. I was ordered to get up from the floor numerous times. If I didn't rise quickly enough, various methods were utilized to bring me to my feet, to wit: the beater would grab my hair and pull me to my feet, also place his hands around my neck from behind, and bring me to my feet, the most painful method and one still causing lasting injury, was to grab my right hand and bend the fingers back as far as possible, without snapping the bones, eliciting a blood curdling scream of agony. I do remember asking my self once, after being "beaten to the floor", why am I trying to get up again, just to be knocked back down, while I
was pushing my shoulder up the wall for leverage to accomplish it.

After this demonstration of Southern Law & Power, I was given a jump suit type garment that was too small to cover me and placed in a cell. While in custody in the police and the sheriff's departments, I never once directed any insults, invectives or cuss words to law enforcement personnel .

Later in the morning I was called out of my cell and informed that I was being released on my own cognizance and ordered to sign a document. The description turned out to be a lie. I was directed to report to a "Court Program", a singular adjunct to the Southern System of Justice. I was to pay for the program while awaiting for my "speedy" right to be brought before a judge !

As I was not in the best of shape, and since it **hurt to breath, hurt to swallow,** I waited a day or two, to get my injuries checked out and documented. Later I reported to the above program, and was directed to come back another day, as hurricane Ivan was approaching. My life lessons continued. Since shelters wouldn't accept pets, I stayed put with my two California cats. I had the only trailer to have a tree smash in the roof, resulting in a large leak that was never fixed. Such was the run of life and luck in Mississippi and it continued in the same vein in the judicial system.

Pg. 3

        I did get my "day in court", five weeks later, with never standing before / speaking to a judge! The "before a judge" process consisted of hearing the announcement to the large contingent in the packed court to raise your hand if you intended to contest that which you have been accused. Those that did so were handed a piece of paper. I did enter, on my own initiative, above one paragraph, that I do not waive my right to a speedy trial ( by a jury? ) After awhile, I was called to a table where **the prosecutor of the day** ( private attorneys rotate along with staff ) sat. I was offered the option that if I pled guilty on either charge, the accompanying one would be dropped. I said that I was not guilty of either, and would not do so, and wanted my "Day in Court" to be exonerated. **I asked him for a copy of the criminal complaint and the police report**. He seemed nonplussed, and **said that most people don't ask** for them. I then asked how or **where do I get them**. He again seemed perplexed and asked court personnel to come over. I believe the woman was the same as who asked me to sign the form alluded to above. A decision was made to write down **an address**, which later proved to be **the building we occupied**, and the **city's prosecutor's office** was directly across the hall ! And of course there was no indication of its presence, **not even a plaque on the door**. The perfidy of Mississippi government and corruption know no bounds. Additionally, I requested his **professional card**. He stated that **he didn't have one** !

        Five weeks later, I had my opportunity for trial in court. Earlier I had filled out a financial status form requesting court appointed counsel, and was denied same. Learning that there would be no jury to hear my defense, I had intended to stand mute, and see what that judicial level would do. When my name was called to verify my presence, and again several minutes later to ask if I was ready, I responded that I intended to stand mute. I wanted a jury of my peers to see the officer's face when I asked two or three very pointed questions. When the officer stepped into court, and stood to the right of the judge's dais, demonstrating his presence to the court, his body language was very rigid and while holding papers in hand, the side of his face exposed to my view, pulsated with nervousness /stress / fear.

        I think the later generated from information he received from the prosecutor about my background and my written demand for a copy of his personnel file relating to his past actions with people who lived in said parks, appropriately excised of necessary confidential information, but signed by his commander that it was up to date and complete without anything removed per subject requested, and also my request that a certain Gulfport police detective appear for the defense.

        I had added concern as to a fair hearing since there was no court stenographer, there would be no record of perjurous testimony. Yet I didn't stand completely muted. I told the judge what I wanted, and foolishly agreed to his method of getting my trial. He said plead "no contest" and you will have it. I still thought that at the next level , there would be a right to jury. How wrong I was. Also the **judge never disclosed, nor any officer of the court,** the fact that I would have to come up with **cash or a bond to get my day in court !** I had to file under oath, a financial statement and appear in court to have the financial posting waived.

        At the latter appearance in the appellate court, I inquired of the judge of the possibility of having a court appointed attorney. She told me in no uncertain terms that she was not of a mind to do so, and if I wanted to pursue it , I had to find a judge who was willing to do so.

Pg. 4

After getting a court trial date certain, by mail, I was enmeshed in finding another place to live, as the park was being closed. I accepted an invitation to move in with a retired Army Major, and since I didn't have a dependable vehicle, I was moving my possessions piece meal via his car. My friend is disabled, and always uses walker. So wanting to render him assistance, I would stay one / two nights at his place, and check my pets daily, and stay a day at my trailer also. In that hectic set up, for some unknown reason, I confused the actual court date of April 8, 2005, as April 18, three days after the park's shut down.

Yet my mistaken belief could be seen, in a filing I addressed to the court a week later requesting a thirty extension. Since the judge I had previously appeared before was that particular week presiding in Biloxi, that was where I "filed" it, and received a stamped copy upon doing so. After having said dated document in hand, the Biloxi court clerk was curious and questioned why I was filing in Biloxi for a Gulfport case. She pursued her curiosity by phone and we both learned that the trial date had passed. She cancelled the just accomplished filing and asked for my copy back. She graciously accepted the xing out of it, and let me keep it, to at least demonstrate my honest belief in the erroneous date.

Subsequently, a writ issued to the lower court to execute its status – judgement (a nolo contendre plea )a hefty fine $ 1114.00 ( originally, approximately $956.00 ) plus interest monthly. Said amount would take three months of my social security retirement - $ 456 / mo.– to meet.

I quizzed a local attorney, who hadn't experienced it, but had heard of a case, where a writ was withdrawn, and the trial date reset. I had neither the funds or resources do pursue it. With the antagonistic mindset demo-stated by the court in my previous appearance regarding appointed legal assistance, a personally appearance to recalendar my appeal, foreboded possible incarceration on the spot .in court.

My plan all along had been to get exonerated of the charges of impeding an officer and disturbing the peace (the question still remains, whose peace? The officer's, by my respectfully asking him a question in my own house?) After an expected "Not Guilty" verdict, I planned to go after the Harrison County deputies for the beating and torture inflicted on me.. After seventeen months, the fingers of my right hand still pains tremendously.

When I told the deputy sheriff who filled out my release paper that I had been beaten up, he told me that a report of it had already been made. The medical person standing at the counter refused to check the painful bump at the back of my head. When I addressed the medical person about my injuries, his response was "So ?"

I believe that with the proper cooperation, the two deputies responsible for the attack on me can be identified. The deputy issuing the release paper **did have compassion in his eyes.**

John A Ortland