**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

JOHN A. ORTLAND                                                                    PLAINTIFF

V.                                                        CIVIL ACTION NO. 1:07cv1075LG-RHW

SHERIFF BRISOLARA, FORMER
SHERIFF GEORGE H. PAYNE, JR.,
MAJOR DIANNE GASTON-RILEY,
CAPTAIN PHIL TAYLOR, et al.

                                                                                   DEFENDANTS

STATE OF MISSISSIPPI

COUNTY OF HARRISON

### AFFIDAVIT OF SHERIFF GEORGE PAYNE, JR.

PERSONALLY CAME AND APPEARED BEFORE ME the undersigned authority

in and for the County and State aforesaid, the within named, George Payne, Jr., who,

after first being duly sworn by me on his oath, did depose and state the following:

1.      My name is George Payne, Jr. I am over the age of twenty-one (21)

        years. I have personal knowledge of the matters and facts contained in

        this Affidavit and I am competent to testify to the matters stated herein . I

        was at all times relevant to the Complaint in this Civil Action the duly

        elected Sheriff of Harrison County and the final policy making official for

        the Harrison County Sheriff's Office ("HCSO") and the Harrison County

        Adult Detention Center ("HCADC"). Additionally, at all relevant times, I

        was the only policy maker for the HCSD.

2.      I took office as the Sheriff of Harrison County in January of 2000, and



**EXHIBIT "D"**

concluded my responsibility as Sheriff on December 31, 2007.

3.    I had no communication or other personal interaction or contact with the Plaintiff in this case at any time during the period of his incarceration at HCADC.

4.    I was not present during any of the alleged events in the Plaintiff's Complaint. Furthermore, I was never present at any locations where he may have been at any time.

5.    I had no involvement in, or knowledge whatsoever of, any events or incidents of September 4, 2005, involving Plaintiff which allegedly occurred in the booking area of the Harrison County Adult Detention Center, until after the alleged incident had already concluded.

6.    At no time was I made aware of any potential risk of harm to Plaintiff's health or safety as an inmate at HCADC, nor was I aware of any facts from which the inference could be drawn that a substantial risk of serious harm existed as to Plaintiff.

7.    At all relevant times, it was the policy of HCADC to provide a safe and secure environment not only for inmates, but also for all officers and other employees of HCADC, and further to protect the general public by preventing any escapes from HCADC. (See Facility Goals, Purpose, and Mission Policy and Procedure; Code of Ethics Policy and Procedure; and General Rules of Conduct Policy and Procedure attached hereto as **Exhibit "1- 3"**).

8.    Due to the nature and size of the HCADC, I could not personally supervise all employees at one time; however, there were in place

adequate policies and procedures to ensure all officers were supervised and acted in a lawful and professional manner and in compliance with the department's policies and procedures, general orders, and the laws of Mississippi.

9.      At all times, the HCADC, had in place adequate hiring, training and supervisory procedures for its deputies.

10.     At all relevant times, HCADC had a Use of Force, Use of Restraints, Weapons and Use of Force, General Order#10, and a Healthcare Service policy in place and in full effect.  (See Use of Force Policy, Use of Restraint Policy, General Order #10, and Healthcare Service policy attached hereto as **Exhibits "4 - 7".**)  All officers were informed and trained on these policies.

11.      It was at all times the policy of the HCADC to thoroughly investigate all allegations and complaints of misconduct and to take the appropriate disciplinary action if such allegations were ever sustained.   At all relevant times, the Harrison County Sheriff's Department had a "Professional Standards Unit" policy in place and in full effect. (See General Order No. 65, which is attached hereto as **Exhibit "8").**  The Professional Standards Unit was responsible for conducting internal administrative investigation and applicant background development.

12.     At all times relevant hereto, employees of the Harrison County Sheriff's Department were subject to disciplinary or corrective actions by their superiors if they failed to comply with departmental policies, rules and procedures, or if they failed to perform their duties in a satisfactory

manner.  A disciplinary board headed by the Major of specific

departments and approved by me convened to hear such charges.  After

the disciplinary hearing was concluded, the board made

recommendations to myself and at that time, I reviewed said charges and

recommendations and made a final determination as to what disciplinary

action should be taken.  See G.O. #62, #44 as **Exhibits "9" and "10"**.

13.    At all relevant times, it was also the policy of HCADC to provide

appropriate training for all employees, including correctional officers as

required by the laws of Mississippi. See Miss. Code Ann. § 45-4-1, et.

seq. At all relevant times, it was HCADC's policy to send newly hired

correctional officers to complete an initial forty (40) hour training program

by state certified officers prior to assuming duties in the jail.  Upon

completion of this initial forty (40) hour program, correctional officers were

to receive on the job training under the supervision of a field training

officer, and an additional eighty (80) hours of instructional training,

followed by refresher training provided throughout the course of the

officer's employment.  All Corrections Officers on duty in Booking at the

HCADC on September 8, 2004 were trained in compliance with all the

foregoing requirements. See **Exhibit "11"**. Will Supplement McDaniel

training records upon receipt.

14.    I have first hand knowledge of the hiring guidelines for the Harrison

County Sheriff's Office that were in place at all relevant times.  The Miss.

Code Ann. § 45-4-1 et. seq. provides that the Board on Jail Officers

Standards and Training should fix a minimum qualifications for the

employment of jail officers in the State of Mississippi.  The Harrison County Sheriff's Office followed these guidelines in hiring correctional officers for the Harrison County Adult Detention Center.  Furthermore, all applicants are subject to a background investigation and pre-employment medical examination to determine whether an employee has the physical and mental qualifications necessary to perform his or her job. Additionally, all employees are required to successfully pass a urinalysis test upon being offered employment.  All Corrections Officers on duty at the HCADC on September 8, 2004, were in compliance with the foregoing requirements.

15.    All allegations of the use of unwarranted or excessive force that were brought to my attention were investigated, and if such allegations were ever substantiated, the officers  received the appropriate disciplinary actions.

16.    There did not exist any policy, practice or custom at the HCSD which condoned the use of unlawful excessive force or the concealment of such acts.  Rather, it was the policy of the HCSD for all corrections officers to use only those amounts of physical force, O.C. spray and restraints which was  necessary to maintain or regain control of inmates.  (See Use of Force Policy, Use of Restraint Policy, General Order #10, and Healthcare Service policy attached hereto as **Exhibits "4 - 7"**.)

17.    During my tenure as Sheriff of Harrison County the Harrison County Adult Detention Center had in effect a policy providing a process for pre-trial detainees and pre-trial detainees and inmates to file formal grievances.

(See attached Grievance Policy as **Exhibit "12"**) This policy included the ability of the inmates to file grievances against corrections officers for officer misconduct. All such grievances filed by inmates were forwarded from the Grievance officer to the Security Officer, who in turn reviewed and forwarded the grievances to the Harrison County Adult Detention Center Warden for review. If the Warden determined that any grievance needed to be investigated further, the Warden and I would discuss same and after our discussion, I would decide whether to refer the Officer Misconduct Grievance to the Professional Standards Division for further investigation. No grievances were received from Plaintiff regarding the alleged incident on September 8, 2004.

18.    Due to the nature and size of the Sheriff's Department and HCADC, I could not personally supervise all employees at one time; however, there were in place adequate policies and procedures to ensure all officers were supervised and acted in a lawful and professional manner and in compliance with the department's policies and procedures, general orders, and the laws of Mississippi. At all relevant times, a sufficient chain of command existed at the HCADC, which enabled all officers to be adequately supervised. See relevant Policies and Procedures collectively attached hereto as Exhibit "1", including Code of Ethics, Use of Force for correctional officers, and Chain of Command.

19.    As the final policy maker of the HCSD, I have never authorized or condoned any policy, practice, or custom of using excessive force or of falsifying and/or covering up any acts done by officers of the HCSD.

20.    At no time was I ever deliberately indifferent to any detainee's rights,
including the Plaintiff's.

21.    All policies attached hereto represent polices and procedures which were
in  place and effect at the time of the subject incident.

Further, Affiant sayeth not.

_____
George Payne, Jr.

Sworn to and subscribed before me on this the ___18th___ day of November, 2009.



_____
                                    Notary Public

My Commission Expires:

_____

*Harrison County Adult Detention Center*
*Policy & Procedure Directive*

## FACILITY GOALS, PURPOSE AND MISSION

EXHIBIT

"D-1"

### DEFINTIONS

Facility Administrator refers to the Director of Corrections who is responsible for all Correctional facilities located in Harrison County.

**POLICY:**   The Harrison County Adult Detention Center is established in accordance with Harrison County Sheriff's Department Policies with the goals of:

A. Ensuring public safety through the provision of professionally managed correctional services of confined offenders detained at the Harrison County Adult Detention Center.
B. Providing a level and quality of programs at least equal to those provided by state-operated facilities that house similar types of inmates.

### MISSION STATEMENTS

It is the mission of the Corrections Division to provide, in a cost effective manner, the highest degree of facility security and safety for the staff and inmates. The philosophy of Corrections if predicated upon three assumptions:

1. Incarceration is, in and of itself, punishment;
2. All inmates shall be held accountable for their actions;
3. Inmates shall not leave the facility any worse physically, emotionally, or psychologically than when they entered.

A positive atmosphere shall be created for both the inmates and staff through the provision of:

1. A safe and secure environment;
2. Adequately trained Correctional personnel;
3. A variety of programs which provide inmates an opportunity to prepare themselves for eventual reintegration into their communities;
4. Positive incentives for inmates through a classification system.

The staff and management of the HARRISON COUNTY SHERIFF'S DEPARTMENT, Corrections Division are committed to the preservation of the basic human rights and dignity of the inmate population. Our responsibilities are simply CUSTODY, CARE AND CONTROL of the inmate population detained in Harrison County.

**PROCEDURE:**

## I.    INSTITUTIONAL GOALS AND MEASURABLE OBJECTIVES

Harrison County Adult Detention Center Administrator shall, on an annual basis, establish goals and measurable objectives to successfully implement the Policy and Mission Statement of this Memorandum.  These objectives shall be reviewed on at least an annual basis by the Harrison County Adult Detention Center Administrator or designee and re-formulated as deemed necessary.  The initial goals shall include:

A. To seek and obtain ACA accreditation from the American Correctional Association.

B. Perform quarterly and unannounced audits to gauge the overall performance of the Harrison County Adult Detention Center departments. Audits shall include a review of policy and procedures to ensure practicability and soundness of operational procedures and to ensure compliance with procedural and mission requirements.

C. Perform daily accountability checks of security features to determine the operating status of the Harrison County Adult Detention Center and correct noted deficiencies in a timely manner.

D. Conduct staffing evaluations to determine the status of staffing deployment relative to functions and the need for increase or re-allotment of staff resources to correct noted deficiencies.

E. Develop and improve Management Information System to eliminate unnecessary expenditure of staff time and resources.  Update information systems database to meet the overall needs of the institution and the operational needs of individual departments.  The effectiveness of the information system as it relates to the overall institutional management will be evaluated in writing at least annually.

F. Substance Abuse Treatment is an important part of inmate programming; therefore, the goal shall be to encourage maximum participation by the inmate population.

G. Meet or exceed all standards defined by ACA contractual agreements.

_____Riley_____                    _01_/_15_/_01_
Facility Administrator                  Effective Date

*Harrison County Adult Detention Center*
*Policy & Procedure Directive*

## CODE OF ETHICS

**POLICY:**   It is the policy of the Harrison County Adult Detention Center that all employees conduct themselves in a manner that creates and maintains respect for themselves as well as the Harrison County Adult Detention Center. In all their activities, personal and official, they should always be mindful of the high standards of behavior expected of them. Therefore, employees shall avoid any action(s) which might result in, or create the appearance of, affecting adversely the confidence of the public in the integrity of the Harrison County Adult Detention Center. It is expected that employees will discuss with their supervisors and/or superiors any problems arising in connection with matters within the scope of this policy.

**PROCEDURE:**

**I.    GENERAL INFORMATION**

The Harrison County Sheriff's Department expects of its employees integrity and honesty, respect for the dignity and individuality of human beings and a commitment to professional and compassionate service. To this end, we will be guided by the following code of ethics:

1.    Employees shall respect and protect the civil and legal rights of all individuals.

2.    Employees shall treat every professional situation with concern for the welfare of the individuals involved and with no intent of personal gain.

3.    Employees shall maintain relationships with colleagues to promote mutual respect within the facility and improve the quality of service.

4.    Employees shall make no public criticism of their colleagues or their facility.

5.    Employees shall respect the importance of all disciplines within the criminal justice system and work to improve cooperation with each segment.

EXHIBIT

"D-2"

6. Employees shall honor the public's right to information and share information with the public to the extent permitted by law subject to individuals' right to privacy.

7. Employees shall respect and protect the right of the public to be safeguarded from criminal activity.

8. Employees shall refrain from using their positions to secure personal privileges or advantages.

9. Employees shall refrain from allowing personal interests to impair objectivity in the performance of duty while acting in an official capacity.

10. Employees shall refrain from entering into any formal or informal activity or agreement which presents a conflict of interest or is inconsistent with the conscientious performance of duties.

11. Employees shall refrain from accepting any gifts, service or favor that is or appears to be improper or implies an obligation inconsistent with the free and objective exercise of professional duties.

12. Employees shall clearly differentiate between personal views/statements and views/statements/positions made on behalf of the facility or Sheriff's Department.

13. Employees shall report to appropriate authorities any corrupt or unethical behaviors in which there is sufficient evidence to justify review.

14. Employees shall refrain from discriminating against any individual because of race, gender, creed, national origin, religious affiliation, age, disability or any other type of prohibited discrimination.

15. Employees shall preserve the integrity of private information; they shall refrain from seeking information on individuals beyond that which is necessary to implement responsibilities and perform their duties; employees shall refrain from revealing non-public information unless expressly authorized to do so.

16. Administrators shall make all appointments, promotions and dismissals in accordance with established county policy, applicable contract agreements and individual merit rather than furtherance of personal interests.

_Riley_
Facility Administrator

_01/15/01_
Effective Date

*Harrison County Adult Detention Center*
*Policy & Procedures Directives*

## GENERAL RULES OF CONDUCT

EXHIBIT

tables "D-3"

**POLICY:**  Employees of the Harrison County Adult Detention Center will obey all policies and procedures of the Harrison County Sheriff's Office as well as the policies and procedures contained in the Harrison County Juvenile Detention Center procedure manual.

**PROCEDURE:**

## I.    GENERAL INFORMATION

Shift Briefing:  The Shift Supervisor will conduct shift briefing and inspection 15 minutes prior to the beginning of each shift.  Personnel scheduled to work who are not present when shift briefing commences will be considered tardy.

Grooming:  All employees will be well groomed at all times following the Sheriff's Office policy regarding uniforms, clothing, hair length and style, facial hair, and the wearing of jewelry.

Courteous:  Employees will be courteous when dealing with the public, inmates, or co-workers.

Professionalism:  Professional behavior is required at all times.  Employees will not engage in any gossip or make any critical remarks that may be perceived as racial slurs or unprofessional behavior. Employees must refrain from fraternizing with people of questionable character on or off duty.

Inmate Treatment:  Employees will treat inmates with courtesy, dignity, and respect at all times.  Employees will be firm but fair when dealing with inmate's problems.  Employees must not form intimate relationships with inmates during nor after detention.

Tobacco Use:  Tobacco use is permitted in designated areas only.  The proper disposal of ashes, cigarette butts, spit cups, etc. is the responsibility of the user. Inmates are not allowed to use any tobacco products of any kind.  Employees nor visitor are permitted to give inmates cigarettes or any tobacco products.

Bulletins:  All personnel will read the bulletin board at the beginning and end of each shift to remain abreast of new orders, policies, etc.

<u>Timecards:</u>  Timecards will be completed daily.  All hours annotated on the timecard must reflect the exact hours that were worked.  Employees may not trade scheduled workdays with another employee unless both employees' Shift Supervisor grant prior approval.

<u>Facility Security:</u>  Only Corrections Officers assigned to duty are allowed behind the counter, therefore, other individuals off-duty in that area must be on official business.

<u>Absences:</u>  An employee will be required to furnish a certificate from an attending physician for any sick leave used in excess of 3 consecutive days; On site medical evaluations may be offered by Shift Supervisor; Employees absent from work who fail to call in will be subject to disciplinary actions.

<u>Calling in Sick:</u>  When calling in sick, an employee must call his /her supervisor at least two hours prior to the beginning of the shift.  If unable to reach one of your supervisors an employee must call the facility and speak only with the Shift Supervisor on duty.  An employee using sick leave which does not require hospitalization or medical attention will remain at his/her residence.  Any change of status or location must be reported to the on-duty supervisor.

Employees placed on extended sick leave must advise his/her supervisor as soon as possible.  It is advisable to have the doctor's office fax excuse to your supervisor.

 No employee will be denied sick leave.  However, abuse of sick leave will be considered a serious violation and will be dealt with through disciplinary measures.  Abuse will be investigated based on the following circumstances:

1) Pattern of using sick leave before or after normal days off.
2) Pattern of using sick leave on weekends and/or holidays
3) Established pattern of frequent use of sick leave.
4) Pattern of using sick leave when special events occur in the city or surrounding area.

<u>Annual Leave, Military Leave, Training Leave Request:</u>  Any employee requesting annual leave, military leave or a training leave must submit a leave request form at least 2 weeks prior to the date the requested leave is to begin.  Any employee scheduled to work on a traditional holiday or county scheduled holiday is expected to report as scheduled.  Depending on staffing needs, limitations may be placed on the number of employees who may be authorized leave at any given time.

**Facility Visits:**  No ex-employee of the Harrison County Sheriff's Office is allowed access inside the facility except in areas available to the general public.  Special visitors such as family members of employees may visit areas in the facility not accessible to the general public with approval from the Facility Captain or on duty Shift Supervisor.


_____Riley_____

Director of Corrections

_____7/27/01_____

Revision Date

*Harrison County Adult Detention Center*
*Policy & Procedures Directives*

<u>**USE OF FORCE**</u>



EXHIBIT

"D-4"

**POLICY:**   All Corrections Officers assigned to duty in the Detention Center will use only those amounts of physical force necessary to maintain or regain control of an inmate.  Use of force is clearly different from physical punishment that is not tolerated under any circumstances.   In no event will physical force be considered justifiable as punishment.

**PROCEDURE:**   In order to give an inmate every opportunity to cease his or her disruptive or aggressive behavior and cooperate, the **Use of Force Theory** documented in **general Order # 10, 4,** will be followed, excluding Deadly Force (i.e., within the confines of the Detention Center.)

**I.    GENERAL INFORMATION:**

**General Order # 10,4**

**Use of Force Theory:**   Five categories of force applicable for corrections environment:

1)    Dialogue         2)    Escort Technique   3)    Pain Compliance
4)    Mechanical Control  5)    Impact Weapon

Physical force will only be used as a last resort to control inmates.

All Corrections Officers will be trained in the proper application of physical force techniques.

**II.    Oleoresin Capsicum**

In the corrections environment, the use of Oleoresin Capsicum (O.C. Spray) may be used before or after Pain Compliance with any inmate who fails to comply with verbal orders and the inmate is yet uncontrollable.  Only officers that are properly trained will be authorized use of O.C. Spray.  Under no circumstances will O.C. Spray be used on an inmate while in approved

restraints or behind a locked cell door. The effects may mask or cover other medical conditions such as allergies, heart conditions, lung problems, diabetes, and overdoses resulting from high toxic levels of drugs like Cocaine, Amphetamines, Barbiturates, PCP, Opiates, Heroin or Alcohol. Chemical agents like O.C. Spray is considered and intermediate use of force alternative.

### III.    Special Circumstances

In unique circumstances where verbal dialogue has failed or has proven to be impractical, staff may be forced to make a decision, such as whether to use force on a pregnant inmate or an aggressive inmate with open cuts, sores, or lesions. Special cases such as mentally ill, handicapped, or pregnant inmates must be carefully assessed by the Shift Supervisor or above, to determine whether the situation is critical enough to require the use of physical force.

**Pregnant Inmates –** When restraints become necessary for pregnant inmates, precautions to ensure the fetus is not harmed will be taken. Medical staff will be summoned immediately to decide whether the inmate's restraints are feasible for her condition, or whether the inmate would be safer restrained in the medical area.

**Inmates with Wounds or Cuts –** Aggressive inmates with open cuts or wounds who have attempted to harm themselves or others should be carefully approached , with staff wearing protective gear.

### IV.    MEDICAL EXAMINATION

Medical Staff will be immediately contacted to examine an inmate involved in an incident requiring the use of force which resulted in injury. An inmate's refusal or acceptance of an examination must be noted on the Incident Report. If injuries occurred, medical attention will be provided for the injured party.    Force or restraint may be used when ordered by physician or his designee in order to allow medical staff to administer medical treatment deemed necessary. The force or restraint must be under the direct supervision of a physician & only when treatment is necessary to protect the health of other persons, as in the case of contagious disease or to protect the inmate against self-inflicted injury or death.

### V.    CLEAN-UP

Any area where there is spillage of blood, or other body fluids, will be sanitized immediately upon the authorization of the Shift Supervisor or above. However, the supervisor must first make the determination whether there is need to preserve evidence.

All blood and body secretions should be immediately removed and placed in an appropriate waste disposal container and the area washed with a disinfectant. In addition, any clothing that have been contaminated with these fluids, including the equipment and clothing of staff involved in the use of force, should be immediately disinfected or destroyed, as appropriate (Note: Assistance from the Medical area will be sought to assure proper handling of hazardous waste)

## VI.    DOCUMENTATION

Each officer involved will document force applied at any level on a Narrative Form. Officer viewing the use of force may be asked to write a narrative depending upon the circumstances. Complete narratives will be submitted to the Shift Supervisor at the conclusion of the shift.

**Use of Force Situations:** It is generally recognized that Corrections Officers have a right to use force as it relates to five situations.

1. Self- Defense: Correctional Officers may use force in their self-defense.

2. Defense of Third Party: Correctional Officers may use force in the defense of a third person, including another staff person, an inmate, or a visitor.

3. Prevention of a Crime: Correctional Officers may use force to prevent the commission of a crime within the facility.

4. Prevention of an Escape: Correctional Officers may use force to prevent an escape.

5. Enforcement of Detention Rules: Correctional Officers may use force in the enforcement of facility rules and regulations.

Force is intended to be used as a control measure when necessary. It will not be used for punishment. In the Use of Force Theory it is not required that an officer use the previous level on the continuum. By necessity, the level of force needed is most often made based on a quick assessment of the potential danger of the situation and the resources available. Typically the lowest level of force that will most quickly effect resolution and neutralize the danger is used.
**All control force must cease as soon as the inmate is subdued, restrained or under control.**

## VII.    DEADLY FORCE

Firearms will only be used as a last resort to prevent an escape, to prevent life threatening injury to a person, to prevent hostages from Being taken or to quell a major disturbance. A verbal order to stop must be issued before a shot is fired. Firearms will not be discharged in any case where there is reason to believe that the life of an innocent bystander will be endangered.

Only employees with current certification will be allowed to carry firearms. No Corrections Officers will carry firearms or weapons on his/her person, concealed or not unless acting within the scope of official duties for the HCADC. Except in emergency situations, officers carrying firearms are assigned to perimeter.

_Riley_

Facility Administrator

_01/01/01_

Effective Date

*Harrison County Adult Detention Center*
*Policy & Procedures Directives*



<u>**USE OF RESTRAINTS**</u>

**POLICY:**      Restraints will be used as a precaution against escape, for medical reasons, when necessary to control inmates exhibiting violent behavior and for internal and external movement of inmates.

**PROCEDURE:**   For detention purposes, the basic authorized restraint devices are the pro-restraint chair, handcuffs, leg irons, waist chains, and medical restraints. Additional devices include items used by C. E. R. T. officers.

## I.   GENERAL INFORMATION:

A.  No restraint device will be used by any staff member as a means of punishment.

B.  Only staff members trained in the use of restraints may apply the authorized devices.

C.  All restraining devices will be used in a humane manner, and applied only as long as absolutely necessary. At no time will restraints be applied in a manner often referred to as "hog tied." Nor will inmates be handcuffed to stair rails.

D.  The use of medical restraints to prevent self-mutilation, self-injury or suicide, must be approved by a member of the medical staff. In an emergency situation, the Shift Supervisor will take the immediate actions necessary to control the situation and contact medical as soon as possible.

E.  All inmates placed in any type of restraint will be closely monitored. Handcuffs and ankle shackles are temporary restraints devices. Inmates **will not** be cuffed and/or shackled & placed in a holding tank or cell indefinitely or without the permission of the Shift Supervisor or above.

## II.    APPLICATION OF MECHANICAL RESTRAINTS:

→All authorized restraints will be used in the following manner.

1.  Restraints will not be applied in a manner which causes undue physical discomfort, inflict pain, restrict blood circulation or breathing of the inmate. If at any time during the inmate's restraint an officer believes a medical problem may be developing he/she will immediately contact the on-duty supervisor and medical staff.

2.  Restraints will not be used about the head and/or neck of the inmate, except helmets designed for head protection.

3.  The maximum amount of continuous time a restraint may be applied to one individual is four hours. The Security Captain or above must authorize continued use of restraints for an inmate who remains unruly after four hours of being restrained.

4.  Restraints must be secured according to training and manufacture recommended usage.

5.  The Booking or Shift Supervisor must approve and will be present and directly supervise the placement and removal of a subject into the restraint chair.

## III.    RESTRAINT OBSERVATION:

A.  Corrections Officers will maintain visual observation of the restrained inmate. A written five-minute activity log will be maintained for all inmates placed in the pro-restraint chair.

B.  Restraints will be checked for excessive tightness a minimum of once every 30 minutes. If a loss of circulation is detected, adjustment will be made as necessary. If an inmate complains of pain caused by restraints, the observing staff member will request an examination of the inmate from the medical staff.

C.  The Shift Supervisor will review the status and need for continued restraint of the inmate a minimum of once every two hours and will document the review on a narrative form.

D.  Any inmate who urinates or has a bowel movement while in the restraint chair or in medical restraint will be removed from restraint for cleaning as soon as possible under the circumstances.

**IV.    DOCUMENTATION:**

A.  The Shift Supervisor is responsible for ensuring that Narratives and Observation Logs are completed.

B.  Frequent Security checks and logs must be maintained anytime an inmate is in the pro-restraint chair.  Additionally, the Booking and Shift Supervisor or above must be contacted to approve or deny the use of the pro-restraint chair.


_Riley_____          _01/01/01_____
Facility Administrator                    Effective Date