## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

JOHN A. ORTLAND                                                                  PLAINTIFF

V.                                                    CIVIL ACTION NO. 1:07cv1075LG-RHW

SHERIFF BRISOLARA, FORMER
SHERIFF GEORGE H. PAYNE, JR.,
MAJOR DIANNE GATSON-RILEY,
CAPTAIN PHIL TAYLOR, et al.                                          DEFENDANTS

STATE OF MISSISSIPPI

COUNTY OF HARRISON

### AFFIDAVIT OF MAJOR DIANNE GATSON-RILEY
### HARRISON COUNTY SHERIFF'S OFFICE

PERSONALLY CAME AND APPEARED BEFORE ME the undersigned authority in and for the County and State aforesaid, the within named, DIANNE GATSON-RILEY, who, after first being duly sworn by me on her oath, did depose and state the following:

1.    My name is Dianne Gatson-Riley.  On or about September 8, 2004, and at all times relevant thereto, I was a Major with the Harrison County Sheriff's Office and held the position of Director of Corrections for the Harrison County Adult Detention Center.  I have personal knowledge of the matters and facts contained in this Affidavit and I am competent to testify to the matters stated herein.

2.    I had no communication or other personal interaction or contact with the Plaintiff in this case, John A. Ortland, at any time during the period of his incarceration at HCADC.

Page 1 of 4



EXHIBIT
"E"

3.    I had no involvement in, or knowledge whatsoever of, any event or incident of September 8, 2004, involving Plaintiff which allegedly occurred in booking at the HCADC.

4.    At no time was I made aware of any potential risk of harm to Plaintiff's health or safety as an inmate at HCADC, nor was I aware of any facts from which the inference could be drawn that a substantial risk of serious harm existed as to Pre-trial Detainee Ortland.

5.    At all relevant times, it was the policy of HCADC to provide a safe and secure environment not only for inmates, but also for all officers and other employees of HCADC, and further to protect the general public by preventing any escapes from HCADC.

6.    Due to the nature and size of the Sheriff's Department and HCADC, I could not personally supervise all employees at one time; however, there were in place adequate policies and procedures to ensure all officers were supervised and acted in a lawful and professional manner and in compliance with the department's policies and procedures, general orders, and the laws of Mississippi.  At all relevant times, a sufficient chain of command existed at the HCADC, which enabled all officers to be adequately supervised. See relevant Policies and Procedures collectively attached hereto as **Exhibit "1"**, including Code of Ethics, Use of Force for correctional officers, and Chain of Command.

7.    It was the policy of the HCADC to thoroughly investigate all allegations and complaints of misconduct and to take the appropriate disciplinary action if such allegations were ever sustained.   At all relevant times, the Harrison

County Sheriff's Department had a "Professional Standards Unit" policy in place and in full effect. See General Order No. 65, which is attached hereto as **Exhibit "2".** The Professional Standards Unit was responsible for conducting internal administrative investigation and applicant background development.

8.    At all relevant times, it was also the policy of HCADC to provide appropriate training for all employees, including correctional officers as required by the laws of Mississippi. See MCA § 45-4-1, et seq. At all relevant times, it was HCADC's policy to send newly hired correctional officers to complete an initial forty (40) hour training program by state certified officers prior to assuming duties in the jail. Upon completion of this initial forty (40) hour program, correctional officers were to receive on the job training under the supervision of a field training officer, and an additional eighty (80) hours of instructional training, followed by refresher training provided throughout the course of the officer's employment. At all relevant times, all of the named Defendants herein were trained according to these policies and procedures; along with all Corrections Officers on duty on September 8, 2004. See HCADC policy regarding officer training, attached hereto as **Exhibit "3".**

9.    At all times, the HCADC, had in place adequate hiring, training and supervisory procedures for its deputies.

10.   At no time was I ever deliberately indifferent to any detainee's rights, including the Plaintiff's.

11.   All policies attached hereto represent polices and procedures which were in place and effect at the time of the subject incident.

Further, Affiant sayeth not.

I certify the above declaration is true and correct under penalty of perjury.

_DIANNE GATSON-RILEY_

Sworn to and subscribed before me on this the ___18th___ day of November, 2009.

Notary Public

My Commission Expires: __11/28/2012__

(SEAL)

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 5534
ROBIN D BUTLER
Commission Expires
Nov. 28, 2012
HARRISON COUNTY

*Harrison County Adult Detention Center*
*Policy & Procedure Directive*

## CODE OF ETHICS

**POLICY:**     It is the policy of the Harrison County Adult Detention Center that all employees conduct themselves in a manner that creates and maintains respect for themselves as well as the Harrison County Adult Detention Center. In all their activities, personal and official, they should always be mindful of the high standards of behavior expected of them. Therefore, employees shall avoid any action(s) which might result in, or create the appearance of, affecting adversely the confidence of the public in the integrity of the Harrison County Adult Detention Center. It is expected that employees will discuss with their supervisors and/or superiors any problems arising in connection with matters within the scope of this policy.

**PROCEDURE:**

## I.     GENERAL INFORMATION

The Harrison County Sheriff's Department expects of its employees integrity and honesty, respect for the dignity and individuality of human beings and a commitment to professional and compassionate service. To this end, we will be guided by the following code of ethics:

1.     Employees shall respect and protect the civil and legal rights of all individuals.

2.     Employees shall treat every professional situation with concern for the welfare of the individuals involved and with no intent of personal gain.

3.     Employees shall maintain relationships with colleagues to promote mutual respect within the facility and improve the quality of service.

4.     Employees shall make no public criticism of their colleagues or their facility.

5.     Employees shall respect the importance of all disciplines within the criminal justice system and work to improve cooperation with each segment.



EXHIBIT

"E-1"

6. Employees shall honor the public's right to information and share information with the public to the extent permitted by law subject to individuals' right to privacy.

7. Employees shall respect and protect the right of the public to be safeguarded from criminal activity.

8. Employees shall refrain from using their positions to secure personal privileges or advantages.

9. Employees shall refrain from allowing personal interests to impair objectivity in the performance of duty while acting in an official capacity.

10. Employees shall refrain from entering into any formal or informal activity or agreement which presents a conflict of interest or is inconsistent with the conscientious performance of duties.

11. Employees shall refrain from accepting any gifts, service or favor that is or appears to be improper or implies an obligation inconsistent with the free and objective exercise of professional duties.

12. Employees shall clearly differentiate between personal views/statements and views/statements/positions made on behalf of the facility or Sheriff's Department.

13. Employees shall report to appropriate authorities any corrupt or unethical behaviors in which there is sufficient evidence to justify review.

14. Employees shall refrain from discriminating against any individual because of race, gender, creed, national origin, religious affiliation, age, disability or any other type of prohibited discrimination.

15. Employees shall preserve the integrity of private information; they shall refrain from seeking information on individuals beyond that which is necessary to implement responsibilities and perform their duties; employees shall refrain from revealing non-public information unless expressly authorized to do so.

16. Administrators shall make all appointments, promotions and dismissals in accordance with established county policy, applicable contract agreements and individual merit rather than furtherance of personal interests.

_____Riley_____                    ___01/15/01___
Facility Administrator                   Effective Date

*Harrison County Adult Detention Center*
*Policy & Procedures Directives*

# USE OF FORCE

**POLICY:**       All Corrections Officers assigned to duty in the Detention Center will use only those amounts of physical force necessary to maintain or regain control of an inmate.  Use of force is clearly different from physical punishment that is not tolerated under any circumstances.   In no event will physical force be considered justifiable as punishment.

**PROCEDURE:**    In order to give an inmate every opportunity to cease his or her disruptive or aggressive behavior and cooperate, the **Use of Force Theory** documented in **general Order # 10, 4,** will be followed, excluding Deadly Force (i.e., within the confines of the Detention Center.)

## I.    GENERAL INFORMATION:

**General Order # 10,4**

**Use of Force Theory:**  Five categories of force applicable for corrections environment:

1)    Dialogue          2)    Escort Technique    3)     Pain Compliance
4)    Mechanical Control  5)    Impact Weapon

Physical force will only be used as a last resort to control inmates.

All Corrections Officers will be trained in the proper application of physical force techniques.

## II.    Oleoresin Capsicum

In the corrections environment, the use of Oleoresin Capsicum (O.C. Spray) may be used before or after Pain Compliance with any inmate who fails to comply with verbal orders and the inmate is yet uncontrollable.  Only officers that are properly trained will be authorized use of O.C. Spray.  Under no circumstances will O.C. Spray be used on an inmate while in approved

restraints or behind a locked cell door. The effects may mask or cover other medical conditions such as allergies, heart conditions, lung problems, diabetes, and overdoses resulting from high toxic levels of drugs like Cocaine, Amphetamines, Barbiturates, PCP, Opiates, Heroin or Alcohol. Chemical agents like O.C. Spray is considered and intermediate use of force alternative.

### III.    Special Circumstances

In unique circumstances where verbal dialogue has failed or has proven to be impractical, staff may be forced to make a decision, such as whether to use force on a pregnant inmate or an aggressive inmate with open cuts, sores, or lesions. Special cases such as mentally ill, handicapped, or pregnant inmates must be carefully assessed by the Shift Supervisor or above, to determine whether the situation is critical enough to require the use of physical force.

**Pregnant Inmates —** When restraints become necessary for pregnant inmates, precautions to ensure the fetus is not harmed will be taken. Medical staff will be summoned immediately to decide whether the inmate's restraints are feasible for her condition, or whether the inmate would be safer restrained in the medical area.

**Inmates with Wounds or Cuts —** Aggressive inmates with open cuts or wounds who have attempted to harm themselves or others should be carefully approached , with staff wearing protective gear.

### IV.    MEDICAL EXAMINATION

Medical Staff will be immediately contacted to examine an inmate involved in an incident requiring the use of force which resulted in injury. An inmate's refusal or acceptance of an examination must be noted on the Incident Report. If injuries occurred, medical attention will be provided for the injured party.  Force or restraint may be used when ordered by physician or his designee in order to allow medical staff to administer medical treatment deemed necessary. The force or restraint must be under the direct supervision of a physician & only when treatment is necessary to protect the health of other persons, as in the case of contagious disease or to protect the inmate against self-inflicted injury or death.

### V.    CLEAN-UP

Any area where there is spillage of blood, or other body fluids, will be sanitized immediately upon the authorization of the Shift Supervisor or above. However, the supervisor must first make the determination whether there is need to preserve evidence.

All blood and body secretions should be immediately removed and placed in an appropriate waste disposal container and the area washed with a disinfectant. In addition, any clothing that have been contaminated with these fluids, including the equipment and clothing of staff involved in the use of force, should be immediately disinfected or destroyed, as appropriate (Note: Assistance from the Medical area will be sought to assure proper handling of hazardous waste)

## VI.    DOCUMENTATION

Each officer involved will document force applied at any level on a Narrative Form. Officer viewing the use of force may be asked to write a narrative depending upon the circumstances. Complete narratives will be submitted to the Shift Supervisor at the conclusion of the shift.

**Use of Force Situations:** It is generally recognized that Corrections Officers have a right to use force as it relates to five situations.

1. Self- Defense: Correctional Officers may use force in their self-defense.

2. Defense of Third Party: Correctional Officers may use force in the defense of a third person, including another staff person, an inmate, or a visitor.

3. Prevention of a Crime: Correctional Officers may use force to prevent the commission of a crime within the facility.

4. Prevention of an Escape: Correctional Officers may use force to prevent an escape.

5. Enforcement of Detention Rules: Correctional Officers may use force in the enforcement of facility rules and regulations.

Force is intended to be used as a control measure when necessary. It will not be used for punishment. In the Use of Force Theory it is not required that an officer use the previous level on the continuum. By necessity, the level of force needed is most often made based on a quick assessment of the potential danger of the situation and the resources available. Typically the lowest level of force that will most quickly effect resolution and neutralize the danger is used.
**All control force must cease as soon as the inmate is subdued, restrained or under control.**

## VII.            DEADLY FORCE

Firearms will only be used as a last resort to prevent an escape, to prevent life threatening injury to a person, to prevent hostages from Being taken or to quell a major disturbance. A verbal order to stop must be issued before a shot is fired. Firearms will not be discharged in any case where there is reason to believe that the life of an innocent bystander will be endangered.

Only employees with current certification will be allowed to carry firearms. No Corrections Officers will carry firearms or weapons on his/her person, concealed or not unless acting within the scope of official duties for the HCADC. Except in emergency situations, officers carrying firearms are assigned to perimeter.

_Riley_                                    01/01/01
Facility Administrator                 Effective Date

*Harrison County Juvenile Detention Center*
*Policy & Procedures Directives*

## CHAIN OF COMMAND

**POLICY:**    It is the policy of the Harrison County Juvenile Detention Center that authority and responsibility shall be designated in a manner, which will facilitate the orderly operation of the facility.

**PROCEDURE:**

### I.    GENERAL INFORMATION

The Director of Corrections has the overall responsibility for the operation of all detention facilities and the supervision of all detention staff and shall report directly to the Sheriff of Harrison County.

All other Juvenile corrections staff personnel report directly to the Shift Sergeant or Facility Lieutenant which ever is appropriate, and work under their direct supervision.

In the event of the absence of the Sheriff, and Director of Corrections, and Facility Lieutenant a designee will be appointed to assume command of the Juvenile Detention Facility.

The following chain of command has been established to facilitate accountability in this decision:

**Sheriff**

**Major**

**Captain**

**Lieutenant**

**Sergeant**

**Field Training Officer**

**Correctional Officer**

**Correctional Officer Trainee**

## II.    ISSUANCE OF ORDERS

"Lawful Order" shall be construed to mean any order, issued by the Sheriff or any ranking officer, for the preservation of good order, efficiency and discipline within the department; or relating to the performance of any duty, provided, such orders are not in violation of any law or officially established departmental policy, procedure, rule or regulation.

Such order may be issued in verbal or written form, and may be over the signature or under the authority of the Sheriff or a ranking officer.

Any order issued shall be in clear, understandable language, civil in tone, and issued in pursuit of departmental business. All lawful orders shall be obeyed promptly, including orders relayed by a supervisor through a person of the same or lesser rank. No supervisory employee will knowingly issue an order which is contrary to any law or procedure. However, the responsibility for justification of the refusal to obey an order, rests with the employee.

Supervisors are responsible for avoiding the issuance of conflicting orders. Orders conflicting with written directives and procedures may be issued only by a Lieutenant or higher in authority, and **must be issued in writing.** In an emergency situation requiring immediate action, a supervisor may issue an order conflicting with an order previously issued. However, the supervisor doing so must justify his/her action.

Upon receipt of a conflicting order, the employee affected will inform the person issuing the conflicting order that a conflict exists. The employee will then obey the last lawful order received. If the employee feels that the order was unjust, unlawful, or improper, he/she will submit a written report to the Director of Corrections.

_Riley_ _____
Director of Corrections

_01/01/01_ _____
Effective Date

General Order #65
Harrison County Sheriff's Department
October 1,2002

George Payne, Jr, Sheriff

## PROFESSIONAL STANDARDS UNIT

1.  **PURPOSE**

    The purpose of this order is to establish the policy for managing and
    staffing the Professional Standards Unit of the Harrison County
    Sheriff's Department.  This policy will outline the procedures for
    investigating complaints of misconduct.

2.  **SCOPE**

    This policy is directed to all department personnel.

3.  **POLICY**

    The Harrison County Sheriff's Department Professional Standards
    Unit shall be responsible for conducting internal administrative
    investigations and applicant background development.

    This policy shall define the methods of investigation and discipline in
    order to ensure the protection of employees' rights through the
    conscientious investigation and ultimate disposition of each inquiry.
    This policy shall ensure the integrity of the department by establishing
    procedures that provide an investigation of any matter that might affect
    the efficient, professional operation of the department, and mandated
    compliance with all general orders.

    A.  Internal Investigations Authority

        Internal inquiries and investigations are performed under the
        authority of the Sheriff. The Professional Standards Unit shall have
        the primary responsibility of investigating complaints of alleged
        employee misconduct. The Professional Standards Unit will operate
        under the supervision and direction of the Sheriff. All orders
        written or verbal issued in connection with any internal
        investigation shall be considered as direct orders from the Sheriff.
        The final authority to exonerate, declare unfounded, not sustained,
        or to sustain any complaint rests solely with the Sheriff. Internal
        inquiries are administrative and should not be construed as
        criminal investigations.

General Order #65 - October 1, 2002                                    1

**EXHIBIT**

tabbies®

"E-2"

B.  Disciplinary Review

Members of the Professional Standards Unit may be required to attend Disciplinary Review Hearings subsequent to internal investigations. The sole purpose will be to provide the facts and circumstances surrounding the respective cases.

C.  Civil Service Meetings

A representative of the Professional Standards Unit may be requested to attend regular or special civil service meetings for providing insight on disciplinary actions occurring inside the department. The representative's responsibility is solely to inform the Civil Service Commissioners of results of particular investigations.

D.  PSU Area of Investigative Responsibility

The Professional Standards Unit will investigate serious or sensitive allegations of misconduct and incidents resulting in actual or potential litigation against the county, the Sheriff's Department or employees of the Sheriff's Department. Any such investigation shall be performed under the guidelines of appropriate county policies and Mississippi Statutes.

Legal Action

The Professional Standards Unit may investigate any pending legal action against the department or it's employees. Upon receipt of such information, a case file will be established which will contain all pertinent information on the action and any request for information.

E.  Shift Supervisor Area of Responsibility

The appropriate immediate supervisor will investigate complaints of less serious violations. This assignment shall not relieve the Professional Standards Unit from lending assistance when requested or monitoring the investigation.

The Supervisor receiving an external complaint or filing an internal complaint is responsible for preserving evidence to include taking documentary photographs when practical and possible. The Supervisor shall take photographs of complainants in all excessive force complaints even if injuries are not visibly present.

General Order #65 - October 1, 2002                                    2

F. Complaints:

~~All external complaints will be documented on a Citizen Complaint Form.~~
Complaints may be received in a variety of ways including, but not
limited to: (a) in person (b) by mail (c) telephone (d) email (e) third party
*Anonymous complaints are investigated, but have limitations caused by the
inaccessibility of the complainant.*

### Procedure for Citizen Inquiry

A citizen alleging misconduct on the part of any employee shall be
directed to the supervisor on duty regardless of the time of day.  The
supervisor may be able to resolve the complaint without the assistance
of the Professional Standards Unit.  Many complaints of alleged
misconduct can be handled by the Shift Commander or a supervisor,
provided it is done in a professional and timely manner.  Unless the
complaint involves gross misconduct or a criminal violation, the Shift
Commander or supervisor should make every attempt to resolve the
matter without involving the Professional Standards Unit.

If the shift supervisor cannot resolve the complaint satisfactorily or there
is an allegation of a criminal nature, the shift supervisor shall complete
the Citizen Complaint Report and forward this form to the Professional
Standards Unit without delay.

In the event a citizen directly contacts the Professional Standards Unit
when initially registering the complaint, the Professional Standards Unit
will be responsible for referring the complaint to the affected supervisor
or completing the Citizen's Complaint Report and other necessary
documentation.

### Traffic Citations/ Arrests

Complaints relative to differences of opinion between an officer and a
citizen over the issuance of a traffic citation or regarding guilt or
innocence subsequent to an arrest, shall not be investigated by the
Professional Standards Unit, but will be properly handled by the judicial
system.

G. Use of Citizen Complaint Report

1. Personnel receiving the complaint shall have the citizen sign the
   Citizen Complaint Report in their presence.  The substance of the
   complaint shall be documented in the appropriate section of this form.

General Order #65 - October 1, 2002                                    3

   2.  Under no circumstances shall the Citizen Complaint Report be used as a means to threaten, intimidate, harass or discourage a citizen from making a complaint.

   3.  Should the citizen refuse to sign the complaint report, the receiving supervisor shall complete the report and document the refusal to sign. A memorandum concerning the allegations shall also be made. The report shall be signed in the space provided for supervisor receiving the complaint. The completed report shall be forwarded to the Professional Standards Unit without delay.

H.  Internal Complaint Procedure

In furtherance of the intent of this policy, any employee may submit a written statement, documenting employee misconduct, directly to the Professional Standards Unit which shall process the complaint in accordance with this general order.

I.  Written Counseling Form

Written Counseling Forms shall be utilized to document an employee's unsatisfactory performance or to document an incident involving employees. Written Counseling Forms in some cases shall serve as a written consultation. A copy of all the internal complaints or incidents shall be forwarded to the Professional Standards Unit.

If the supervisor believes the complaint, either external or internal, is of such a serious nature that it requires immediate attention, or he needs assistance, he shall contact the Sheriff or the appropriate Director within his chain of command, who shall determine if the complaint requires immediate assistance or the assignment of personnel from the Professional Standards Unit. If the appropriate Director deems that the complaint should be investigated by the Professional Standards Unit, the Director shall make the request to the Sheriff.

J.  Initial Investigation Procedures

   1.  Upon receipt of the documentation and approval of the Sheriff, the Professional Standards Unit shall determine which general order(s), policies or statutes were violated.

   2.  Should a formal investigation be ordered, an *Initial Notice of Inquiry Report* shall be drafted and forwarded to the affected employee through the chain of command, except under the following circumstances:

     (a)  The alleged violation is ongoing.

     (b)  The investigation possibly would be compromised by the release of the information.

General Order #65 - October 1, 2002                4

   3. Garrity warnings shall be given to employees and signed prior to all formal interviews whereby the possibility of criminal conduct may be alleged. When there is no criminal conduct alleged, employees interviewed by the Professional Standards Unit will be advised of the authority of the investigation as well as requirements of complete truthfulness and candor. This will be documented on an audio recording tape.

K. Classification of Allegations

The Professional Standards Unit investigator shall, in the Internal Investigative Report, recommend 1 of the following 5 classifications:

1. Unfounded- the allegation is false or not factual.

2. Exonerated- the incident occurred, but was lawful and proper.

3. Not Sustained- there was insufficient evidence to prove or disprove the allegation.

4. Sustained- the allegation is supported by a preponderance of evidence to justify a reasonable conclusion that the incident did occur.

5. Policy Failure- the policy was not specific or did not cover this incident.

L. Internal Investigations

1. Internal Complaints will be assigned an IA# by the Professional Standards Unit OIC.

2. The complaint will then be assigned to a Professional Standards Unit Investigator by the OIC.

Each internal investigative report will contain:

1. The general order(s) violated.
2. The details in chronological order, addressing each point of accusation.
3. A synopsis of each witness statement.
4. Mitigating circumstances, if appropriate.
5. Recommended classification of the allegations

M. Case File Preparation:

*Unless special circumstances occur, all internal investigations must be completed within thirty days. An extension may be given by the Professional Standards Unit OIC or the Sheriff.*

General Order #65 - October 1, 2002                                                            5

Each case file and report will contain the site or copies of the general orders violated. In addition, each case file will include letters and memos relevant to the investigation. All reports must include an investigator's finding and conclusions. Findings and conclusions should be a summary listing of relevant conclusions drawn by the investigator based on facts and circumstances of the investigation and a recommended classification of the allegations shall be provided by the Investigator. The Professional Standards Unit shall not make any recommendations regarding disciplinary action. All Garrity statements, including audio or video tapes of such interviews, must be filed separately from the investigative file in an envelope marked "Garrity statement" and filed accordingly.

N. Dispositions

1. Informal Personnel Actions- Actions documented on a Written Counseling Form shall be processed by forwarding a copy of the Written Counseling Form to the Professional Standards Unit for record.

2. Formal Discipline- A copy of the Formal Discipline Report, (letter of suspension, termination, etc.) shall be maintained in the affected employee's personnel file as defined in the department General Orders and a copy to be maintained in the Professional Standards Unit file.

O. Corrective Actions

1. Informal Personnel Action- When practical informal actions should be positive and educational rather than punitive in nature. The employee's immediate supervisor will complete all informal personnel actions.

2. Formal Discipline- Construed to be punitive in nature. It includes, but shall not be limited to:

(a) Written Reprimand
(b) Demotion
(c) Suspension
(d) Termination

P. Procedural Due Process

1. Prior to awarding any level of informal personnel action or formal discipline, the recommending authority may contact the Professional Standards Unit in order to determine the record of the offending employee and the consistent level of personnel action or discipline for the violation.

General Order #65 - October 1, 2002                                          6

2. **Required Actions**- The following steps will be taken to ensure due process:

   (a) The employee must be informed of the charge(s) against him/her.
   (b) The employee must be given an explanation of the evidence underlying the charge(s).
   (c) The employee must have the opportunity to respond to the charge(s).
   (d) All notices and hearings must be done in a meaningful time and a meaningful fashion.

   If the internal investigation classifies the case as either exonerated, not sustained, unfounded or policy failure, the employee(s) involved will receive a letter of disposition.

Q. **Reviews, Appeals and Grievances**

   All appeals and grievances shall follow procedures herein and established by the Harrison County Civil Service Commission and Department Policy. The Sheriff and all Division OIC personnel may review all informal and formal personnel actions.

   <u>Obstruction of Internal Investigation</u>

   No employee shall by writing, speaking, utterance or any other means commit an act which would hinder or obstruct an authorized internal investigation by the Harrison County Sheriff's Department.

   <u>Confidentiality of Investigations</u>

   All complaints and complaint investigations will be confidential and will not be discussed within or outside the department without approval of the Sheriff or his designee.

   <u>Unauthorized Internal Investigation</u>

   No employee shall initiate, conduct, or otherwise participate in any unauthorized investigation.

   <u>Other Administrative Investigations</u>

   **Officer Involved Shootings**

   The Harrison County District Attorney's Office shall be responsible for conducting an independent investigation of all shootings involving officers of the Harrison County Sheriff's Department. The Sheriff may request other independent investigations by the Mississippi Highway Safety Patrol or other law enforcement agencies. The Harrison County Sheriff's Department Professional Standards Unit will conduct all internal investigations.

General Order #65 - October  1, 2002                                   7

### Background Investigations

Background investigations of applicants including sworn, non-sworn and reserves, will be conducted by the Professional Standards Unit. A background investigation by the Professional Standards Unit may be requested by any Director when the Director is informed of a need to begin the hiring process of applicants. The PSU investigator will be given a checklist of needed information, and the items on the list will be noted as to time and date of completion. Upon completion of the investigation the application will be returned to the personnel officer with a cover sheet indicating whether or not the applicant passed the background process. In addition, a copy of the cover sheet will be forwarded to the Sheriff and the affected Director. Without the approval of the Sheriff, applicants shall not be offered employment until after a satisfactory background investigation has been completed and it is determined that the candidate is suitable for the position which he/she has applied.

General Order #65 - October 1, 2002                                                8

# Training for Correctional Officers

## 80 Hour Correctional Academy
Must be conducted within 2 years of hire
(State of Mississippi Requirement)

## 40 Hour Pre-Service
Must be conducted prior to post assignment

## In-Service Training

Ethics & Human Relations
Cultural Diversity
OC Spray Certification/Re-Certification
Verbal Judo
1st Line Supervisor's Training
CPR Refresher
Report Writing Refresher



EXHIBIT

tabbies

"E-3"

*Harrison County Adult Detention Center*
*Policy & Procedure Directive*

## TRAINING PLANS

**POLICY:**   The Harrison County Adult Detention Center will establish and maintain a training program and training coordinator to facilitate appropriate training levels for all employees of the Harrison County Adult Detention Center. This program will incorporate both basic recruit and in-service training for employees.

**PROCEDURE:**

## I. GENERAL INFORMATION

A. The Harrison County Adult Detention Center Officer Training Programs and trainer qualifications are governed by the Minimum Standards Board on Jail Officers Standards and Training, the Harrison County Sheriff's Department and ACA standards. The training plan will be reviewed annually.

B. All Training Coordinators will meet or exceed Harrison County Sheriff's Department requirements.

C. Training curriculum will meet or exceed Minimum Standards requirements.

D. An Advisory Committee will be established which will meet quarterly to review the Unit Training Program. The committee will be chaired by the Services Captain and will consist of representatives from various departments. Written reports from these meetings will be forwarded to the Harrison County Adult Detention Center Administrator

E. The Training Advisory Committee will conduct an ongoing formal evaluation and assess the pre-service, in-service and specialized training programs and will submit a written report to the Harrison County Adult Detention Center Administrator for appropriate changes in the annual training plan. The training plan is developed, evaluated and updated based on these assessments that identify current job related training needs.

F. Whenever possible, these training programs will be conducted by the Training Academy or Sheriff's Department Staff.

G. Facilities and equipment for classroom training programs will be available on site at the Harrison County Adult Detention Center. The equipment and training programs will be located in an area that will provide isolation from other employees and from inmates. Alternate sites will be selected to best accommodate small or large classes. Facilities for physical training, firearms and chemical agents will be located at or off the facility and will conform to the same requirements as the classroom programs.

H. Employees who are designated as non-exempt will be paid in accordance with facility policy for time spent in training programs authorized by the Facility Administration. Per diem and travel expenses will be paid to any facility employee who attends training seminars which require those employees to be away from home overnight or where the use of privately owned vehicles has been authorized by the Harrison County Adult Detention Center Administration. Funds will also be available to reimburse staff who attend training during off duty hours.

I. All new correctional officers will receive a minimum of forty (40) hours of training/orientation prior to being assigned to a particular job. This orientation/training will include, at a minimum, orientation to the purpose, goals, policies and procedures of the institution and Harrison County Sheriff's Department; working conditions and regulations, responsibilities and rights of employees; and an overview of the correctional field. The orientation/training should include some preparatory instruction related to a particular job assignment. Upon assignment to a post new employees will be assigned to a Field Training Officer.

J. Correctional officers assigned to a specialized unit must have one (1) year experience as a Correctional Officer and at least 40 hours of training before being assigned. At least 16 of the 40 hours annual training must be pertaining to the specialized unit assignments. Emergency unit members shall receive training in and maintain certification in PPCT, Chemical Agents, First Aid/CPR and Firearms.

K. Correctional Officers, in addition to the 40 hour orientation training, will receive 80 hours of basic correctional training. In addition, all Correctional Officers will receive the required amount of in-service training each subsequent year of employment.

L. All Clerical/Support employees will receive a minimum of sixteen (16) hours of training during the first year of employment and sixteen (16) hours of training each year thereafter.

M. All support employees and professional specialists who have regular or daily inmate contact will receive a minimum of forty (40) hours of training during their first year of employment and forty (40) hours of training each

year thereafter (e.g. Food Service, Industrial Supervisors, Case Managers, Chaplains, Teachers, Medical Personnel, Volunteers, Recreation Specialist).

N. All Harrison County Adult Detention Center administrative and managerial staff will receive a minimum of forty (40) hours of training during their first year of employment and forty (40) hours of training each year thereafter. This training should include, at a minimum, General Management, Labor Law; Employee Management Relations, elements of the Criminal Justice System; relationships with other service agencies.

O. The Training Coordinator will give all part-time employees and contract personnel a formal orientation appropriate to their assignments and any additional training as determined by Harrison County Sheriff's Department Rules, applicable court orders, Mississippi State Law and Facility Administration.

P. Prior to assignment to a post involving possible use of a firearm, all personnel authorized to use firearms will be trained in the use, safety, care and constraints involved in the use of firearms. All personnel authorized to use firearms will be required to demonstrate competency annually.

Q. All employees of the Harrison County Adult Detention Center will be encouraged to continue their education. Administrative leave and/or reimbursement is available for employees attending approved meetings, seminars or work related activities. Efforts will be made to coordinate all employees' educational activities with institutional requirements.

R. All personnel who work with inmates will receive sufficient training so that they are thoroughly familiar with the rules of inmate conduct, the rationale for the rules and the sanctions available.

S. On the job training will be provided to all full-time employees during their probationary period.

| _____ | _____ |
| Facility Administrator | Effective Date |

Riley                01/01/01

| Harrison County Adult Detention Center | Policy Number | Pages: 02 |
|---|---|---|
| Policy and Procedures | | |
| Chapter: Training | Related Standards: | |
| Subject: Training Plans | | |

## Policy

The Harrison County Adult Detention Center will establish and maintain a training program and training coordinator to facilitate appropriate training levels for all employees of the Harrison County Adult detention Center. This program will incorporate both basic recruit and in-service training for employees.

## PROCEDURE:

I.   **General Information**

A.   The Harrison County Adult Detention Center Officer Training programs and trainer qualifications are governed by the Minimum Standards Board on Jail Officers Standards and Training, the Harrison County Sheriff's Department and ACA standards. The training plan will be reviewed annually.

B.   All Training Coordinators will meet or exceed Harrison County Sheriff's Department requirements.

C.   Training curriculum will meet or exceed Minimum Standards requirements.

D.   An Advisory Committee will be established which will meet quarterly to review the Unit Training Program. The committee will be chaired by the Training Director and will consist of representatives from various departments. Written reports from these meetings will be forwarded to the Warden.

E.   The Training Advisory Committee will conduct an ongoing formal evaluation and assess the pre-service, in-service and specialized training programs and will submit a written report to the Warden for appropriate changes in the annual training plan. The training plan is developed, evaluated and updated based on these assessments that identify current job related training needs.

F.   Whenever possible, these training programs will be conducted by the Sheriff's Department, Corrections Division, and staff.

G.   Facilities and equipment for classroom training programs will be available on site at the Harrison County Adult Detention Center. The equipment and training programs will be located in an area that will provide isolation from other employees and from inmates. Alternate sites will be selected to best accommodate small or large classes. Facilities for physical training, firearms and chemical agents will be located at or off the facility and will conform to the same requirements as the classroom programs.

H.   Employees who are designated as non-exempt will be paid in accordance with facility policy for time spent in training programs authorized by the Facility Administration. Per diem and travel expenses will be paid to any facility employee who attends training seminars which require those employees to be away from home overnight or where the use of privately owned vehicles has been authorized by the Harrison County Adult Detention Center Administration. Funds will also be available to reimburse staff who attend training during off duty hours.

I. All new officers will receive a minimum of one hundred-sixty (160) hours of training/orientation prior to being assigned to a particular job. This orientation/training will include, at a minimum, orientation to the purpose, goals, policies and procedures of the institution and Harrison County Sheriff's Department; working conditions and regulations, responsibilities and rights of employees; and an overview of the correctional field. The orientation/training should include some preparatory instruction related to a particular job assignment. Upon assignment to a post, new employees will be assigned to a Field Training Officer.

J. Correctional Officers, in addition to the one hundred-sixty (160) hours of training, will receive 80 hours of basic correctional training. In addition, all Correctional Officers will receive the required amount of in-service training each subsequent year of employment.

K. All Clerical/Support employees will receive a minimum of sixteen (16) hours of training during the first year of employments and sixteen (16) hours of training each year thereafter.

L. All support employees and professional specialist who have regular or daily inmate contact will receive a minimum of forty (40) hours of training during their first year of employment and forty (40) hours of training each year thereafter (e.g. Food Service, Industrial Supervisors, Case Managers, Chaplains, Teachers, Medical Personnel, Volunteers, Recreation Specialist.).

M. All Harrison County Adult Detention Center administrative and managerial staff will receive a minimum of forty (40) hours of training during their first year of employment and forty (40) hours of training each year thereafter. This training should include, at a minimum, General Management, Labor Law; Employee Management Relation, elements of the Criminal Justice System; relationships with other service agencies.

N. The Training Coordinator will give all part-time employees and contract personnel a formal orientation appropriate to their assignments and any additional training as determined by Harrison County Sheriff's Department Rules, applicable court orders, Mississippi State Law and Facility Administration.

O. Prior to assignment to as post involving possible use of firearm, all personnel authorized to use firearms will be trained in the use, safety, care and constraints involved in the use of firearms. All personnel authorized to use firearms will be required to demonstrate competency annually.

P. All employees of the Harrison County Adult Detention Center will be encouraged to continue their education. Administrative leave and/or reimbursement is available for employees attending approved meetings, seminars or work related activities. Efforts will be made to coordinate all employees' educational activities with institutional requirements.

Q. All personnel who work with inmates will receive sufficient training so that they are thoroughly familiar with the rules of inmate conduct, the rationale for the rules and the sanctions available.

R. On the job training will be provided to all full time employees during their probationary period.

| Effective Date | Approved By |
|---|---|
| Sept. 1, 2007 | *[signature]* |